In re James T. WILSON, Debtor.

Sarah JONES, Louise Pool, Barbara Ford, Claire Dailey, Jan Boyce, Kay Picha, Jean Murphy, Lib Joyce, Fay S. Arnold, Gwen Lindsay, Dorothy Carson, Gwen Breedlove, Carol Marsh, Almeria Watson, Inez Sharpe, Becky Kendricks, Katernia Flysta, Robert Wedel, John Hendricks, Valdese Chavis, Plaintiffs,

v.

James T. WILSON, Defendant.

Bankruptcy No. 85–1299–BKC–6P7.
Adv. No. 85–272.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

May 5, 1987.

Nancy F. Alley, Altamonte Springs, Fla., for defendant.

Davison Douglas, Raleigh, N.C., for plaintiffs.

## MEMORANDUM DECISION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding was commenced by the above-captioned plaintiffs against debtor, James T. Wilson, to determine that a debt owed plaintiffs by debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The authority which plaintiffs rely upon states that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.       .       .       .       .

(2) for money, property, services, or an extension renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;  ...

11 U.S.C. § 523.

Prior to the time debtor/defendant filed for protection under Title 11 of the United States Code, the plaintiffs in this action had instituted suit against debtor and his wholly-owned business, J. Thomas Wilson Group, Inc., in the United States District Court, Middle District of North Carolina. In the District Court, plaintiffs alleged that debtor, along with other persons, had violated The Securities Act of 1933, The Securities Exchange Act of 1934, The Advisors Act, N.C.Gen.Stat. § 78A–56(a)(1) and (2), N.C.Gen.Stat. § 75–1.1(b), and that the de-fendants were guilty of common law fraud and deceit, negligence, and breach of contract. Neither debtor nor J. Thomas Wilson Group, Inc., responded to the allegations. On July 29, 1985, a hearing was held on plaintiffs' motion for entry of default judgment against James T. Wilson and J. Thomas Wilson Group, Inc. At the conclusion of the hearing, the District Court Judge announced his findings of fact and conclusions of law on the record and directed plaintiffs' counsel to prepare the appropriate papers. The papers were submitted. On September 25, 1985, the District Court Judge entered a Memorandum Opinion and Judgment which he had separately drafted.

However, in the time between the date of the hearing and the date the Memorandum Opinion and Judgment was entered, defendant, James T. Wilson, filed a voluntary petition under 11 U.S.C. Chapter 7.

Since plaintiffs rely on the Findings of Fact and Conclusions of Law of the District Court, this Court must determine before addressing the merits of the action, whether the automatic stay of 11 U.S.C. § 362 which came into effect on September 10, 1985, nullifies the Memorandum Opinion and Judgment entered by the District Court on September 25, 1985.

According to 11 U.S.C. § 362, the filing of a voluntary petition operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a). If an action described in § 362(a) is taken in violation of that section then the action is void, or at least voidable. See *In re Anderson*, 62 B.R. 448, 452 (Bkrtcy., D.Minn.1986); and *Matter of Baldwin—United Corp.*, 52 B.R. 541, 548 (Bkrtcy., S.D.Ohio 1985). Determination of whether a particular action is within the scope of subsection (a) is a question of fact.

In this matter, a proceeding against the debtor/defendant had been commenced prepetition and prosecuted to final summary judgment. The parties to the proceeding had concluded all activity concerning the proceeding, and the judge announced his ruling on the record in open court. All that remained was for the oral ruling to be codified in written form. It was at that point that the automatic stay came into effect to prevent any party from continuing with the proceeding or to prevent any party from enforcing the ruling of the District Court Judge.

In *Anderson, supra,* the bankruptcy court was faced with virtually the same situation and asked to decide whether a court violates the automatic stay when it proceeds to decision after a bankruptcy petition has been filed by a defendant when the matter was under advisement at the time of filing. As is the case here, none of the parties to the proceeding took any action after the bankruptcy petition had been filed, only the court took action. The *Anderson* court found as a matter of law

that this type of activity is not within the scope of the automatic stay, accordingly, the automatic stay was not violated. In support of this decision, the Court stated that it was extremely reluctant "... to extend the strictures of the automatic stay over state court judicial officers (as opposed to parties to state court proceedings)...." *Anderson, supra* at 453.

■ This Court adopts the policy and decision of the *Anderson* court. Where parties to a proceeding have concluded all activity and the court makes an oral ruling or takes the matter under advisement prepetition, the entry of a decision post-petition by the court is not an action which is stayed under § 362(a). This situation is significantly different than if one of the parties to the action tries to enforce the decision after it is entered post-petition, or takes some other type of affirmative action without first seeking relief from § 362(a). See 11 U.S.C. § 362(a)(1), (2). Accordingly, the Memorandum Opinion and Judgment entered by the District Court on September 25, 1985, is valid and binding on the debtor/defendant.

■ The second issue which must be decided before reaching the merits of this action is whether the doctrine of collateral estoppel applies to foreclose relitigation of certain facts, which findings of fact were found in the Memorandum Opinion entered by the District Court on September 25, 1985.

In *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987), the Eleventh Circuit articulated in an action to determine dischargeability of a debt, three elements which must be met in order for the doctrine of collateral estoppel to apply:

(1) the issue at stake must be identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in the prior litigation; and

(3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

*Id.* at 1064, citing, *In re Held*, 734 F.2d 628, 629 (11th Cir.1984).

The issue at stake in this dischargeability action is not whether the debt can be dis-

charged but rather the findings of fact made by the court in the prior action. *Halpern, supra* at 1064. If plaintiffs are proceeding under § 523(a)(2)(A), as here, the findings of fact must show that "... the Defendant committed the fraud with the specific intention to deceive and that the creditor as a result sustained the alleged loss and damage." *Matter of Uliasz,* 69 B.R. 292, 294–95 (Bkrtcy., M.D.Fla.1987). *Cf. In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986).

In the prior action here, the District Court found that:

> ... 4. During the summer of 1982, defendants Cassandra Long and James Wilson traveled from Florida to North Carolina on several occasions and made presentations to plaintiffs and other residents of Greensboro, North Carolina, distributing written materials to plaintiffs which they had brought from Florida and soliciting plaintiffs to buy fractional interests in a real estate limited partnership to be formed with respect to certain real property located in Orange County, Florida. Specifically, defendants Wilson and Long attempted to interest the plaintiffs in purchasing two office buildings in Orange County, Florida, known as the "Pines" and the "Fairbanks."
>
> 5. In response to the solicitations of defendants Wilson and Long, plaintiffs agreed to pay and did pay defendants $83,246.80 in exchange for fractional interests in a real estate limited partnership to be established by the defendants.
>
> 6. In making their investments, plaintiffs relied on several statements defendants Wilson and Long made which later turned out to be materially false and deceptive.[1]

Based on its findings of fact, the District Court concluded that:

> 4. Defendants made definite and specific representations to plaintiffs which were materially false, deceptive, and

which were made with the knowledge of their falsity with the intent to induce plaintiffs to rely upon them. Plaintiffs did in fact reasonably rely upon these fraudulent representations in making their investment with defendants to their detriment.[2]

There is no question that the District Court findings of fact satisfy the elements of § 523(a)(2)(A) and that the determination of fraud was a "critical and necessary" part of the District Court judgment.

Debtor/defendant asserts however that the second element of the test, that the issues were actually litigated, is not met because the judgment was obtained by default. This assertion is without merit under the circumstances. See *Gibbs v. Air Canada,* 810 F.2d 1529, 1535–36 (11th Cir. 1987). Debtor/defendant was given the full opportunity to defend himself in the District Court action and he chose not to do so. Debtor/defendant could have reasonably foreseen the consequences of not defending an action based in part on fraud. It would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance. In any event, however, there is no harm because the testimony presented to this Court by Sara Jones was sufficient to clearly establish fraudulent conduct within the meaning of § 523(a)(2)(A).

■ Having determined that the doctrine of collateral estoppel applies and that the elements of § 523(a)(2)(A) are met, the remaining issue is to what extent the $113,-240.40 judgment owed plaintiffs is nondischargeable. The undisputed facts are that: (1) plaintiffs suffered damages in the amount of $83,246.80 measured by the actual monies invested; (2) plaintiffs entered into a settlement agreement prior to institution of the District Court action wherein debtor/defendant, along with other parties agreed to pay plaintiffs $64,246.60;[3] (3)

---

1. Plaintiff's Exhibit No. 7, "Memorandum Opinion."

2. *Id.*

3. Although plaintiffs' amended complaint sought the Court to find that both the $113,-

240.40 judgment and the $64,246.60 settlement agreement were nondischargeable, the only evidence before the Court concerns the $113,240.40 judgment. The proof of claim filed by plaintiffs in the main case is for the $113,240.40 judgment. The Court will not address the monies represented by the settlement agreement.

the settlement agreement was never completely consummated; (4) plaintiffs instituted the District Court action and sought actual damages; (5) plaintiffs recovered $45,500.00 from parties other than debtor/defendant; and (6) the District Court judgment trebled the remaining damages, $37,746.80, to $113,240.40 in accordance with N.C.Gen.Stat. § 75–16.[4]

Section 523(a)(2)(A) excepts from discharge only those monies actually obtained by fraud. In this cause, the actual investments totaling $83,246.80 were the monies obtained by fraud. Since plaintiffs have recovered $45,500.00, only the remaining monies obtained by fraud, $37,746.80, could be nondischargeable. The judgment as trebled cannot be excepted from discharge in its entirety because N.C.Gen.Stat. § 75–16 is an attempt by the North Carolina legislature to punish persons who engage in unfair and deceptive acts and practices affecting commerce.[5] This exercise of police power by the North Carolina legislature is contrary to the purpose of bankruptcy and fraud exceptions to discharge and cannot be enforced under these circumstances. See *Birmingham Trust Nat. Bank v. Case,* 755 F.2d 1474, 1477 (11th Cir.1985).

For these reasons, a final judgment finding the debt nondischargeable under § 523(a)(2)(A) to the extent of $37,746.80 will be separately entered.

**4.** Plaintiff's Amended Complaint filed July 1, 1986.

**5.** See Chapter 75, N.C.General Statutes.