**In re William M. GURLEY, Debtor.**

No. 95–03833–6B7.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 27, 2001.

James E. Foster, Akerman, Senterfitt & Eidson, P.A., Orlando, Florida, for Trustee.

John R. Dunlap, Humphreys, Dunlap, Wellford, Acuff & Stanton, P.C., Memphis, Tennessee, United States Trustee, Orlando, Florida, for Betty Jean Gurley.

**ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON TRUSTEE'S OBJECTION TO ALLOWANCE OF CLAIM NO. 3 FILED BY BETTY JEAN GURLEY AND TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON TRUSTEE'S OBJECTION TO ALLOWANCE OF CLAIM NO. 9 FILED BY BETTY JEAN GURLEY**

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This case came on for hearing on the Trustee's Motion for Summary Judgment on its Objection to Allowance of Claim No. 3 filed by Betty Jean Gurley "Claim No. 3 Motion" and Trustee's Motion for Summary Judgment on Its Objection to Allowance of Claim No. 9 filed by Betty Jean Gurley "Claim No. 9 Motion" (collectively, the "Motions"). (Docs. 200 & 202).[1] Betty Jean Gurley ("Mrs. Gurley") filed responses to the Motions. (Docs. 212 & 213).[2] Mrs. Gurley also filed supplemental responses to the Trustee's motions for summary judgment at the Court's invitation to outline for the Court those issues of disputed fact which Mrs. Gurley asserts would prevent the granting the Trustee's motions for summary judgment. (Docs. 221 & 222). The only sworn evidence submitted by Mrs. Gurley in opposition to the Trustee's motions is her affidavit in support of Claim No. 3.

Appearing were: James E. Foster on behalf of the chapter 7 Trustee, George E. Mills, Jr., and John Dunlap and James E. Bailey on behalf of Betty J. Gurley.

After reviewing the motions for summary judgment, the responses in opposition, arguments of counsel, and authorities for their respective positions, there is no genuine issue as to any material fact and that the undisputed material facts set forth below compel the conclusions of law set forth below which entitle the Trustee to summary judgment on all claims.

## I. FINDING OF FACTS.

### A. Mills v. Gurley.

William M. Gurley (the "Debtor") filed a voluntary petition for Chapter 7 bankruptcy relief on July 26, 1995 (the "Petition Date"), and George E. Mills, Jr., was appointed Chapter 7 Trustee (the "Trustee").

---

1. The Trustee filed objections to each of Mrs. Gurley's four claims. (Docs. 102, 104, 186 & 199). Additionally, on April 13, 1998, the United States filed an objection to various claims in this case, including the claims filed by Mrs. Gurley on April 24, 1996 and October 15, 1997. (Doc. 84). The United States asserts that Claim No. 3 relates to attorney fees paid by Mrs. Gurley on behalf of Gurley Refining Co., Inc. ("GRC") or the Debtor and that to the extent Claim No. 3 is for debts incurred by GRC such claim should be disallowed because GRC is not a debtor in this bankruptcy case. The United States also objects to Claim No. 4 in its entirety based upon this Court's September 16, 1997 Amended Judgment in *George E. Mills, as Chapter 7 Trustee, v. Betty Jean Gurley*, Adversary Proceeding No. 96–159–6B7. The United States additionally asserts that Mrs. Gurley is not entitled to a claim pursuant to 11 U.S.C. § 502(h).

2. Mrs. Gurley also filed an answer to the Trustee's objection to Claim No. 9. (Doc. 211). In that answer, Mrs. Gurley contends that the Trustee's assertion that any allowed claim should be subordinated requires addressing the objection in an adversary proceeding. Mrs. Gurley did not renew this contention in her response to the Motions. In her answer, Mrs. Gurley also states that the Trustee's objection to Claim No. 9 should be dismissed for the Trustee's failure to comply with the rules governing bankruptcy adversary proceedings. Because the Court sustains the Trustee's objection to Claim No. 9 on other grounds, it is not necessary to reach this issue to enter a final order.

The Trustee initiated an adversary proceeding against Betty Jean Gurley, the Debtor's wife, to recover property of the estate. *See George E. Mills, as Chapter 7 Trustee v. Betty Jean Gurley,* Adversary Proceeding No. 96–159–6B7 (the "Adversary Proceeding").[3]

A Memorandum Opinion (the "Memorandum Opinion") in favor of the Trustee and against Mrs. Gurley was entered on August 15, 1997. (Adv. Pro. 95–293–6B7 Docs. 109 & 109A).

An Amended Judgment was entered pursuant to Mrs. Gurley's request for reconsideration on September 16, 1997. (Adv. Pro. 95–293–6B7 Doc. 122). Mrs. Gurley held $11,070,287 in certain real property and the business known as Moltan, as the nominee of W.M. Gurley. The Trustee was entitled to recover that property and its proceeds from Mrs. Gurley as Mr. Gurley, the Debtor, was the true owner. The United States Supreme Court's April 30, 2001, denial of Mrs. Gurley's Petition for Certiorari rendered the Court's September 16, 1997 Amended Judgment final and subject to no further appeal. The findings of fact and conclusions of law in the Memorandum Opinion and the judgments entered pursuant thereto in the Adversary Proceeding are incorporated into this Order and Memorandum Opinion by reference. Mrs. Gurley asserts claims, discussed *infra,* deriving from the Memorandum Opinion and the judgments entered pursuant thereto and the enforcement thereof.[4]

### B. Mrs. Gurley's Tennessee Bankruptcy.

On October 20, 1997, after the entry of the Amended Judgment, Mrs. Gurley filed her own individual chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Tennessee, Western Division, *In re Betty Jean Gurley,* Case No. 97–35255–L (hereinafter "Mrs. Gurley's Bankruptcy Case"). Mrs. Gurley's Bankruptcy Case was assigned to United States Bankruptcy Judge Jennie D. Latta. The Tennessee Court undertook an examination of the Memorandum Opinion and Amended Judgment to determine its meaning and effect, after the Trustee unsuccessfully sought dismissal of Mrs. Gurley's Bankruptcy Case as a bad faith filing, or, alternatively, the transfer of venue to this Court. *See In re Gurley,* 222 B.R. 124 (Bankr.W.D.Tenn.1998).

The Tennessee Court held that the effect of the Amended Judgment was to "recognize an equitable interest in the disputed assets in favor of the Trustee, most closely resembling a constructive trust." *Id.* at 135. The Tennessee Court determined the Trustee's "equitable lien" attached to some but not all of the property asserted to be property of Mrs. Gurley's estate[5] and the balance of the Trustee's claim [$11,070,287] would be treated as unsecured. *Id.* at 145. The Tennessee

3. This Adversary Proceeding was consolidated with *United States v. Gurley (In re Gurley),* Adversary Proceeding 95–293–6B7.

4. United States District Judge Sharp affirmed that judgment in an Order dated August 9, 1999, Order (hereinafter the "District Court Order") upon which this Court relies herein.

5. The Tennessee Court found that the Trustee's equitable lien attached to the assets used in Moltan (paragraph 2 of this Court's Amended Judgment); the survivorship interest of W.M. Gurley in certain Tennessee real property (paragraph 6 of the Amended Judgment); a condominium in Lake County, Florida (paragraph 7 of the Amended Judgment); and certain real property located in Nevada (paragraph 11 of the Amended Judgment). See 222 B.R. at 140. Judge Latta also identified the specific property of Moltan subject to the Trustee's equitable lien. *See id.* at 139–40.

Court determined the value of the assets used by Moltan and the other real property subject to the equitable lien. (Doc. 222—Ex. 3 & 4—the memorandum opinion and order issued by the Tennessee Court determining the value of these assets).

### C. Mrs. Gurley's Claims.

Mrs. Gurley filed four proofs of claims. The deadline to file a proof of claim in the Debtor's case was April 24, 1996 (the "Claim Deadline").

#### 1. Claim No. 3.

Mrs. Gurley filed an "unsecured" proof of claim for money loaned on July 19, 1995, in the amount of $535,600.00 ("Claim No. 3") on April 24, 1996. The claimed debt was purportedly incurred within one week of the Petition Date. A promissory note dated July 19, 1995 was attached to Claim No. 3, as evidence of the debt. The promissory note was made by Gurley Refining Co., Inc. ("GRC"), payable to the order of Mrs. Gurley in the amount of $535,600.00. The promissory note was signed only by GRC. The Debtor, William M. Gurley, signed this promissory note solely in his representative capacity as the president of GRC.

#### 2. Claim No. 9 and its predecessors, Claim Nos. 4 & 8.

Mrs. Gurley filed a second proof of claim "under § 502(h) for judgment in favor of Trustee for recovery of alleged fraudulent conveyances" in the unsecured amount of $11,070,280.00 ("Claim No. 4") on October 15, 1997. Mrs. Gurley noted on Claim No. 4 that she "files this proof of claim to preserve her claim against the Chapter 7

estate pending the outcome of the appeal, said claim to include the value of Moltan Company in addition to the $11,070,-280.00." [6] The Amended Judgment was affirmed and is now final.

The Trustee filed an objection to Claim No. 4 (Doc. 102) on August 24, 1998, stating that this claim was filed after the bar date, that Mrs. Gurley was not legally entitled to assert a claim pursuant to the Bankruptcy Code, including § 502(h), and that Mrs. Gurley is collaterally estopped from asserting the claim because of this Court's findings in the Memorandum Opinion.

Mrs. Gurley filed a third proof of claim "under § 502(h) for judgment in favor of Trustee for recovery of alleged fraudulent conveyances" in the unsecured amount of $10,995,548.79 ("Claim No. 8") on October 23, 1998. Mrs. Gurley noted on Claim No. 8 that she "files this proof of claim to preserve her claim against the Chapter 7 estate, pursuant to the Claimant's Third Amended Plan of Reorganization, confirmed 9/21/98, an additional $11,070,289 plus interest is to be paid to this estate and the Claimant reserves her right to amend and supplement this claim at such time as payment is made." [7]

The Trustee filed an objection to Claim No. 8 (Doc. 188) on September 10, 1999, again asserting that the claim was filed after the bar date, that the claim should be disallowed because it was not supported by any documentation, that Mrs. Gurley was not legally entitled to assert a claim under the Bankruptcy Code, and that Mrs. Gurley was collaterally estopped from asserting a claim based upon this Court's find-

---

6. The dollar amount appears to be a clerical error as the exact amount of the monetary award as contained in paragraphs 1, 3, 4, 5, 8, 9, 10, and 13 of the Amended Judgment totals $11,070.287.

7. Again, the dollar amount appears to be a clerical error, as the amount in the Amended Judgment is $11,070,287. See footnote 7, supra.

ings in the Memorandum Opinion. The Trustee filed an amended objection to Claim No. 4 (Doc. 187) asserting that Claim No. 4 was a duplicate of Claim No. 8, or alternatively, if a new claim, such claim should be disallowed on the same bases as Claim No. 8.

Mrs. Gurley filed a fourth proof of claim on October 19, 1999, "based upon 11 U.S.C. § 502(h)" in the unsecured amount of $23,913,308.66 claiming this debt was incurred by the September 16, 1997 Amended Judgment ("Claim No. 9"). Mrs. Gurley seeks to amend Claim No. 4 and Claim No. 8, through Claim No. 9, in the amount of $23,913,308.66. Mrs. Gurley attached no writing as required by Fed. R. Bankr.P. 3001(c) to Claim No. 4, Claim No. 8 or Claim No. 9. The Trustee filed an objection to Claim No. 9 raising the same grounds as his previous objection to Claim No. 8 on July 3, 2001.

## II. CONCLUSIONS OF LAW.

### A. Standard for Summary Judgment.

■ The Eleventh Circuit recently discussed summary judgment in the bankruptcy context in *In re Optical Tech., Inc.,* 246 F.3d 1332 (11th Cir.2001), and stated:

Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings and contested matters in bankruptcy cases by Bank. R. 7056 and 9014, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). " 'In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing

summary judgment.' " *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

It is axiomatic that a bankruptcy court deciding a summary judgment motion, just like a district court, must determine whether there are any genuine issues of material fact. *See Carey Lumber Co. v. Bell,* 615 F.2d 370, 378 (5th Cir.1980) (per curiam) (holding that a bankruptcy court that (1) determined that there were no issues of material fact, (2) accepted all undisputed factual allegations as true, and (3) found that summary judgment was warranted as a matter of law, "followed the correct legal standard."). Like a district court, a bankruptcy court may only grant summary judgment where there is no genuine issue of material fact. *See* Fed. R. Civ.P. 56(c).

246 F.3d at 1334. The burden is on the movant, in this case the Trustee, to show that he is entitled to summary judgment. *See In re Britt,* 200 B.R. 409 (Bankr. M.D.Fla.1996).

### B. Burden of Proof.

■ Fed. R. Bankr.P. Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." The objecting party has the burden of going forward and introducing sufficient evidence to rebut the presumption of validity created pursuant to Rule 3001(f). "Such evidence must be sufficient to evidence a true dispute and must have probative force

equal to the contents of the claim. Upon introduction of sufficient evidence by the objecting party, the burden of proof must then be met by the claimant by a preponderance of the evidence." 8 *Collier on Bankruptcy*, ¶ 3001.05 (15th ed.1995). "The burden of proof is on the objecting party to produce evidence 'equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim ... The burden of ultimate persuasion rests with the claimant.'" *In re Homelands of DeLeon Springs, Inc.*, 190 B.R. 666, 668 (Bankr.M.D.Fla.1995) citing *In re VTN, Inc.*, 69 B.R. 1005 (Bankr. S.D.Fla.1987).

■ A claim is not entitled to be considered as prima facie evidentiary proof when such a claim is based upon a writing and the claimant fails to attach the original or a duplicate writing, or, if the writing is lost or destroyed, the claimant fails to supply an explanation of the loss or destruction. *See* Fed. R. Bankr.P. Rule 3001(c). *See also Bank of Bellwood v. Stoecker (In re Stoecker)*, 143 B.R. 879, 883 (N.D.Ill.1992); *In re Lindell Drop Forge Co.*, 111 B.R. 137, 142–43 (Bankr.W.D.Mich.1990); *In re All-American Auxiliary Assoc.*, 95 B.R. 540, 545 (Bankr.S.D.Ohio 1989).

■ The asserted claim must be satisfactorily established where the claimant is closely related to the debtor. *See In re H. Hicks & Son, Inc.*, 10 F.Supp. 684, 686 (S.D.N.Y.1935). *See also In re McClelland*, 275 F. 576 (S.D.Cal.1920) (disallowing claim of relative of debtor upon finding

no obligation upon which claim could be made);[8] *In re All–American Auxiliary Ass'n*, 95 B.R. 540, 544–45 (Bankr. S.D.Ohio 1989) (holding that where claimant is an insider his dealings with the debtor are subject to strict scrutiny).[9] "The fact that the bankrupt is closely related to a creditor is a circumstance which justifies a more rigid scrutiny than would be the case if no such relation existed." *Ohio Valley Bank Co. v. Mack*, 163 F. 155, 156–57 (6th Cir.1906).

### C. Mrs. Gurley's Claims.

■ Under 11 U.S.C. § 101(5) a "claim" is defined as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(5) 2001. Congress intended by the Section 101(5) language to adopt a broad definition of "claim." *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). The terminology "right to payment" within the definition of "claim" means nothing more nor

---

8. In *McClelland*, the Court found insufficient evidence to establish the existence of loans to a debtor from his sister. The Court stated that "[T]o allow a claim in bankruptcy upon such evidence would constitute a dangerous precedent, and would open the door to conspiracy and fraud and enable dishonest people to rest their claims simply upon their own bare assertions and statements under oath." *In re McClelland*, 275 F. at 578.

9. In *All–American Auxiliary Assoc.* the insider's proof of claim failed to attach supporting documentation for the majority of the claim. The Court found the claim to be "unsupported by reliable, probative documentation or testimony." *In re All–American Auxiliary Assoc.*, 95 B.R. at 547. The Court also noted that the insider's claim was not based upon any valid promise of remuneration. *See Id.* at 546.

less than an enforceable obligation. 501 U.S. at 83, 111 S.Ct. 2150.

1. *Claim No. 3.*

██ The Trustee objected to Claim No. 3 because the promissory note attached to the claim in support thereof, on its face, is the obligation of GRC, and not the Debtor. (Doc. 102). There is no genuine dispute on this issue. The claim, as filed, does not represent an obligation enforceable against the Debtor's estate.

Mrs. Gurley filed a response to Trustee's Motion for Summary Judgment on August 10, 2001 (Doc. 213),[10] and a Statement of Disputed Issues of Fact Requiring Resolution as to Claim No. 3 (the "Supplemental Response") (Doc. 221) on September 10, 2001; in which she attempted to identify disputed facts relevant to the determination of Claim No. 3.

Mrs. Gurley acknowledges the promissory note attached to the claim is that of GRC, and not that of the Debtor, but she attempts to create a factual issue by asserting that "the note was given to Mrs. Gurley to evidence Mr. Gurley's obligations to her for attorneys' fees paid and costs incurred which Mrs. Gurley paid on his behalf." (Doc. 213 at p. 2).

She attaches her own sworn affidavit in which she states, "I expended funds on behalf of Mr. Gurley prior to the filing of his bankruptcy case for legal fees and other expenses which total **at least the amount** of Claim No. 3." No documents are attached to the claim that would establish such expenditures. Mrs. Gurley states that she would anticipate offering proof in the form of canceled checks and

invoices to substantiate the claim and asks for "a brief period of time" in which to collect the documentation and to amend the claim.

Mrs. Gurley contends that Mr. Gurley gave the GRC promissory note to evidence his obligation. Mr. Gurley is a sophisticated and experienced businessman. He was well aware that he would have to give his own promise to pay, not a third party's, had he intended to evidence his own obligation. His delivery of the GRC note does not "evidence" his personal obligation.

Mr. Gurley purported to divest himself of all assets and caused Mrs. Gurley to pay all his bills and expenses. Mrs. Gurley's affidavit does not identify a specific amount owed; specific bills, individuals or law firms paid; specific costs incurred; or the source of the funds from which the alleged, indefinite payments were made. Mrs. Gurley's naked statement that she, as the nominal holder of Mr. Gurley's assets and as his spouse of more than fifty years, expended sums on his behalf is not sufficient to state a claim against the Debtor's estate.

Mrs. Gurley's affidavit attempts to raise issues of fact that would support a claim entirely different from the claim she purported to assert in Claim No. 3. The claim bar date was April 24, 1996, and any new claim is untimely. Mrs. Gurley may not graft the claim she now wants to prosecute onto the original, defective claim by eleventh-hour amendment. The Trustee filed his objection pointing out the defect in Claim No. 3 more than three years ago. Mrs. Gurley had ample time to file an amendment and did not prior to respond-

**10.** Mrs. Gurley contends that the Trustee's Motion for Summary Judgment as to Claim No. 3 was premature because the twenty-day time period, applicable under Fed. R. Bankr.P. 7056 and 9014, had not expired at the time the Trustee filed the Motion. Noting

that the Trustee's Objection to Claim No. 3 was filed on August 24, 1998, and the Trustee's Motion as to Claim No. 3 was filed on July 5, 2001. Mrs. Gurley agreed to proceed at the hearing on the Trustee's motion.

ing to the Trustee's Motion for Summary Judgment.

Mrs. Gurley has failed to identify any genuine issue of material fact as to Claim No. 3 and that summary judgment in favor of the Trustee as to that claim is appropriate.

2. *Claim No. 9 and its Predecessors.*

Mrs. Gurley grounds Claim No. 9 and its predecessors, Claim No. 4 and Claim No. 8, on § 502(h) of the Bankruptcy Code. She raises issues unrelated to a § 502(h) claim, asserting that she has a specific interest in real and personal property included in the Debtor's estate which must be valued and for which she must be compensated. Neither basis asserted will support her claim in her supplemental response to the Trustee's Motion for Summary Judgment.

a) *Section 502(h) Does Not Authorize Claim No. 9 or its Predecessors.*

■ Section 502(h) claims usually arise where a creditor is required to repay or return a payment received during the preference period preceding the debtor's bankruptcy. The obligation for which the payment was made is revived and may be asserted against the debtor's estate because the creditor has lost the value of the payment received. Section 502(h) of the Bankruptcy Code provides that:

A claim arising from the recovery of property under section *522, 550,* or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(h) (2001).

The policy underlying § 502(h) was enunciated by the United States Supreme Court in *Page v. Rogers,* 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332 (1909). There, a bankrupt had made a preferential payment to his brother. The Court, noting the legitimacy of the non-bankrupt-brother's claim, provided that the non-bankrupt was entitled to prove his claim and receive a dividend from the estate upon equality with other creditors. *Id.* at 581, 29 S.Ct. 159. Although § 502(h) and its Bankruptcy Act predecessor, § 57n, were enacted much later, case law construing the provision has followed the Court's reasoning.

"When a trustee recovers property under 11 U.S.C. § 550, the [party from whom recovery is made] is authorized under § 502(h) to pursue a claim against the bankruptcy estate the same as if such claim had arisen before the date of the filing of the petition." See *Southmark Corp. v. Schulte, Roth & Zabel, L.L.P. (In re Southmark Corp.),* 242 B.R. 330, 341 (N.D.Tex.1999). To pursue such a claim against the debtor, however, the [party from whom recovery is made] must be a creditor of the debtor or be able to assert a claim against the debtor under principles of common law.

*Official Committee of Unsecured Creditors v. Liberty Savings Bank, FSB (In re Toy King Distrib's, Inc.),* 256 B.R. 1, 204 (Bankr.M.D.Fla.2000).

In *Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.,* 242 B.R. 330 (N.D.Tex. 1999), *aff'd in part, rev'd in part,* 239 F.3d 365 (5th Cir.2000), the court found that a transferee of a preferential transfer is entitled to assert a claim under § 502(h) as if such claim arose before the date of filing. The court went on to note that if the transferee fails to present evidence to establish it was a creditor entitled to recover on a claim against the debtor prior to the

bankruptcy, or cannot establish third party beneficiary or subrogation rights, it cannot successfully assert a Rule 502(h) claim post-bankruptcy. *See, Southmark,* 242 B.R. at 342.

Courts continue to recognize that § 502(h) addresses the problem of creditors who need to reassert their satisfied pre-petition claims, ràther than providing for a new claim created by the mere avoidance of a pre-petition transfer. *See County of Sacramento v. Hackney (In re Hackney),* 93 B.R. 213, 218 (Bankr.N.D.Cal. 1988) (holding that § 502(h) reinstated non-dischargeable pre-petition claim rather than creating a new, dischargeable claim); *Nakagawa v. Sergio, Inc. (In re Sergio, Inc.),* 16 B.R. 898, 910 (Bankr. D.Haw.1981) (holding that recipient of fraudulently transferred house, who had not contributed any of her own funds to its purchase and who had participated in the fraudulent conveyance, had no claim against bankruptcy estate after transfer to her was avoided); *Lawrence v. Lawrence (In re Lawrence),* 237 B.R. 61, 79 (Bankr. D.N.J.1999) (noting basis for "claim" of ex-spouse in context of § 502(h)).

■ Mrs. Gurley's claim fails because she did not have a claim against the Debtor before the Petition Date. The mere reversal of a pre-petition transfer does not automatically cause a claim to "arise" in favor of the disappointed transferee. Congress enacted § 502(h) and its predecessor[11] to protect creditors whose pre-petition claims were paid by pre-petition transfers that were later avoided or recovered by the Trustee or Debtor in Posses-

sion. The transferee whose payment was avoided or recovered post-petition, without § 502(h), would, at least arguably, be unable to file a claim against the estate. The legislative notes to § 57n make this clear:

We have also added a provision which broadly is declaratory of existing law, namely, that a creditor from whom a transfer is recovered or against whom a lien is avoided in favor of the estate may file his reinstated claim within thirty days from the date of such recovery or avoidance.

Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936) 180 (emphasis added).

This analysis is supported by the absence of evidence a pre-petition obligation existed between the Debtor and Mrs. Gurley that would give rise to Claim No. 9 to allow Mrs. Gurley to assert the rights of a creditor. *See* 11 U.S.C. §§ 101(5), 502(h). Mrs. Gurley has not established the property recovered by the Trustee had been put in her name or delivered to her possession to satisfy an obligation she could have asserted against the Debtor, her husband, pre-bankruptcy or against his estate post-bankruptcy, as required by *Southmark and Toy King. See, Southmark Corp.,* 242 B.R. at·342; *Toy King,* 256 B.R. at 204.

b) *Claim No. 9 Does Not Arise From a Valid, Pre–Petition Right to Payment.*

Mrs. Gurley seeks to recover, through Claim No. 9, and its predecessors, the *entire* value of Moltan and other assets as determined by the Tennessee Court in its

---

**11.** Section 57n provided, in relevant part, that "a claim arising in favor of a person by reason of the recovery by the trustee from such person of money or property, or the avoidance by the trustee of a lien held by such person, may be filed within thirty days from the date of such recovery or avoidance, but if the recovery is by way of a proceeding in which a final judgment has been entered against such person, the claim shall not be allowed if the money is not paid or the property is not delivered to the trustee within thirty days from the date of the rendering of such final judgment, or within such further time as the court may allow."

Order dated August 31, 1998 (hereinafter the "Valuation Order") (Doc. 222—Ex.4),[12] as well as all amounts [$11,070,287] consisting of cash and securities as described in the Amended Judgment that were turned over or paid to the Debtor's estate and has been determined to be the property of the Debtor, W.M. Gurley, and thus the property of the Debtor's estate, in the Adversary Proceeding.

The Amended Judgment and Memorandum Opinion, affirmed by the United States District Court and the Eleventh Circuit Court of Appeals, was that Mrs. Gurley held the assets recovered by the Trustee as the nominee of her husband, the Debtor. The Debtor, and not Mrs. Gurley, retained ownership of the assets and the attempted transfers of the assets used by Moltan and the other assets were never validly effected, and were always property of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(1).[13] The Memorandum Opinion and District Court Order determined at the time of the Debtor's bankruptcy filing, the Debtor was the effective owner of all the other property (cash, bonds and other securities) supposedly "transferred" to his wife.[14] The Trustee did not recover any of Mrs. Gurley's property; the Trustee recovered property rightfully owned by the estate.

c) *Mrs. Gurley's Interest in the Property Subject to Claim No. 9 Has Been Finally Resolved and is Res Judicata.*

■■■ "A final judgment on the merits bars further claims by parties or their privies based on the same cause of action," under the doctrine of res judicata, *Mon-*

*tana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Res judicata encourages reliance on judicial decisions, bars vexatious litigation and frees courts to resolve other disputes. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■■■ "[W]hile res judicata bars the relitigation of claims, collateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir.1998).

■■■ Mrs. Gurley states that a genuine issue of material fact exists as to the value of her interest in the property subject to the claim, in her "Statement of Disputed Issues of Fact Requiring Resolution as to Claim No. 9" (hereinafter the "Supplemental Submission") (Doc. 222).

Mrs. Gurley continues to claim an interest in certain assets used by Moltan despite prior rulings, which are now final. Mrs. Gurley asserts the continued existence of these interests and demands that they be valued and returned to her or that she receive compensation therefor. This issue is foreclosed in these proceedings by the force of the prior ruling. Mrs. Gurley's new claim is a new and an alternative

---

12. In the Valuation Order, and the corresponding Memorandum Opinion, the Tennessee Court determined that the value of the Moltan assets subject to the Trustee's equitable lien was $10,376,000.00.

13. *See* Memorandum Opinion at p. 15; Order at pp. 5 & 8.

14. *See* Memorandum Opinion at p. 25; Order at p. 6.

theory as to why she has a continuing interest in the assets used by Moltan previously. To address the issues Mrs. Gurley now raises to avoid summary judgment as to Claim No. 9 would be to relitigate not only all of the valuation issues litigated in the Tennessee Court, but the issues initially litigated before this Court. The claim is barred by the doctrine of res judicata.

Mrs. Gurley's claim as to the remainder of the assets that the Tennessee Court determined to be subject to the Trustee's equitable lien also fails. Mrs. Gurley now contends that her interest in the Lake County Condominium must be valued because she purchased that Condominium with her own funds. That issue should have been included in her appeal of the Amended Judgment. It was not. The principles of res judicata bar relitigation of issues concerning Mrs. Gurley's rights to the property of the Debtor's estate under the guise of valuing an interest through her Claim No. 9.

Mrs. Gurley asserts issues of disputed facts must be resolved as to other assets this Court previously determined the Debtor owned. Her claims are rejected on the grounds of res judicata and collateral estoppel, for the same reasons as referenced in connection with the Lake County Condominium.

Mrs. Gurley recognized and honored the Trustee's unsecured claim, totaling $11,070,287.00 in the consensual confirmed plan in her Tennessee Bankruptcy case. She recognized and honored the Trustee's equitable lien on the Moltan assets and the other assets as valued by the Tennessee Court and paid the same to the Debtor's estate upon confirmation. Mrs. Gurley is now barred by the doctrine of res judicata

from seeking to undo what was agreed to in the consensual confirmed plan of reorganization.

The documents Mrs. Gurley attached to her Supplemental Response do not serve to establish the claim she seeks to assert. Those documents were evidence in the adversary proceeding and were weighed and evaluated in determining the findings of fact and conclusions of law embodied in the Memorandum Opinion. None of the documents serves to raise a factual issue not heretofore conclusively decided against Mrs. Gurley's claims.

Mrs. Gurley's post-petition claim allegedly made pursuant to § 502(h) fails because she has no pre-petition claim to reinstate. Mrs. Gurley had no pre-petition claim against the Debtor that led the Debtor to attempt these transfers.[15] Mrs. Gurley cannot now assert a claim under § 502(h) for the value of the property the Debtor attempted to transfer. The doctrine of res judicata bars the re-litigation of these issues. The summary judgment in favor of the Trustee as to Claim No. 9 and its predecessors is due to be granted.

## III. CONCLUSION.

Based on the foregoing, the Court finds that the Trustee's objections should be sustained, and the claims of Mrs. Gurley disallowed in their entirety.

Accordingly:

IT IS ORDERED, ADJUDGED AND DECREED that:

1. The Trustee's Motions for Summary Judgment on Its Objections to Allowance of Claim Nos. 3 and 9 filed by Betty Jean

---

**15.** The Debtor testified that "estate planning and health concerns"—rather than a pre-existing obligation to his wife—led him to attempt to transfer the various assets to his

wife. *See* Memorandum Opinion at p. 11. As an alternative basis for it's ruling, the Court found that the Debtor attempted the transfers to defraud his creditors. *See Id.*

Gurley (Document Nos. 200 and 202) are GRANTED.

2. The Trustee's Objection to Allowance of Claim No. 3 in the amount of $535,600.00 filed by Betty Jean Gurley is SUSTAINED.

3. The Trustee's Objection to Allowance of Claim No. 9 filed by Betty Jean Gurley in the amount of $23,913,308.66 on October 19, 1999, which amends Claim No. 8 in the amount of $10,995,548.79 filed on October 23, 1998, and Claim No. 4 in the amount of $11,070,280.00 filed on October 15, 1997, is SUSTAINED.

4. Claims Nos. 3, 4, 8, and 9 are DISALLOWED in their entirety.

DONE and ORDERED.